## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## DETROIT DIVISION

**CHRISTINE M. BARRY, individually,
and on behalf of all others similarly
situated,**

   **Plaintiff,**

**v.**         **Case No. 2:20-cv-12378**

**ALLY FINANCIAL INC.,**

   **Defendant.**

### <u>DEFENDANT'S MOTION TO STAY</u>

Defendant Ally Financial Inc. ("Ally"), by counsel, submits this Motion to Stay all proceedings in this matter pending the Supreme Court of the United States' decision in *Facebook, Inc. v. Duguid*, No. 19-511 ("*Facebook*"). For the reasons set forth in the accompanying Memorandum in Support of Motion to Stay, Ally respectfully requests the Court stay this case because the Supreme Court's decision in *Facebook* is likely to be dispositive of Plaintiff's claim in this case, or at minimum, would substantially streamline litigation. The interests of judicial economy and the interests of the Parties would be served by staying this matter until a decision in *Facebook* has been rendered. A proposed Order granting this Motion has been submitted pursuant to the Court's ECF Procedures.

Dated: December 28, 2020

**ALLY FINANCIAL INC.**

By: _____*/s/ Ethan Ostroff*_____

Ethan G. Ostroff
Mark D. Kundmueller (P66306)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7541
E-mail: ethan.ostroff@troutman.com

*Counsel for Ally Financial Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## DETROIT DIVISION

**CHRISTINE M. BARRY, individually,**
**and on behalf of all others similarly**
**situated,**

      **Plaintiff,**

**v.**                                    **Case No. 2:20-cv-12378**

**ALLY FINANCIAL INC.,**

      **Defendant.**

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO STAY

Defendant Ally Financial Inc. ("Ally"), by counsel, submits this Memorandum in Support of its Motion to Stay (the "Motion"). For the reasons set forth below, Ally respectfully requests this Court stay this matter pending the Supreme Court of the United States' decision in *Facebook, Inc. v. Duguid*, No. 19-511 ("*Facebook*").

## I.      INTRODUCTION

The Supreme Court of the United States granted *certiorari* and heard oral arguments on December 8, 2020 in a case that will resolve what qualifies as an Automatic Telephone Dialing System ("ATDS") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  *See Facebook*, No. 19-511.  This question, which has caused splits in authority among the Circuit Courts of Appeals,

will be dispositive of a threshold issue in this case: whether Ally's telephone system qualifies as an ATDS.  If the telephone system allegedly used to place calls to Plaintiff's cell phone does not qualify as an ATDS, Plaintiff's TCPA claim fails as a matter of law. Staying this matter until the Supreme Court has resolved the split over what constitutes an ATDS is in the interests of the Parties and the interests of judicial economy.

## II.    BACKGROUND

Plaintiff filed a national Class Action Complaint (the "Complaint") in this matter on August 31, 2020.  (*See* ECF No. 1).  Plaintiff's Complaint alleges, on behalf of herself and others similarly situated, that Ally violated the TCPA by placing calls to cell phone numbers belonging to non-customers using an ATDS. *See id.* at ¶¶ 32, 51.  Individually, Plaintiff alleges that Ally called her cell phone using an ATDS in an attempt to reach her brother, who has an account with Ally. *Id*. at ¶ 17.  While the Parties have submitted a Joint Discovery Plan (ECF No. 12), no Scheduling Order has been entered by the Court and neither Party has served discovery.

Prior to Plaintiff filing her Complaint, on July 9, 2020, the Supreme Court of the United States granted *certiorari* in *Facebook* to resolve a Circuit split on "whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e]

a random or sequential number generator.'"  Order, *Facebook*, No. 19-511, 2020 U.S. LEXIS 3559, at *1 (U.S. July 9, 2020).  The Supreme Court then heard oral arguments on December 8, 2020, and it is expected to issue a decision no later than June of 2021.  The Supreme Court's decision will be dispositive of a threshold issue in Plaintiff's claim: whether Ally's telephone system qualifies as an ATDS.

### III.   LEGAL STANDARD

This Court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936).  There are no mandatory prerequisites on a moving party seeking a stay, but where "the stay motion is premised on the alleged significance of another case's imminent disposition, courts have considered the potential dispositive effect of the other case, judicial economy achieved by awaiting adjudication of the other case, the public welfare, and the relative hardships to the parties created by withholding judgment." *Caspar v. Snyder,* 77 F. Supp. 3d 616, 644 (E.D. Mich. 2015) (citation omitted).  This Court has also found that the resolution of litigation in other courts warrants a stay where the ruling "could be highly relevant in the adjudication of claims like those asserted in this action." *See Garza v. Credit Union One*, Case No. 17-10673, 2017 U.S. Dist. LEXIS

169506, at *2 (E.D. Mich. Oct. 13, 2017) (Borman, J.) (staying litigation pending D.C. Circuit Court's decision in *ACA International*).

## IV.   ARGUMENT

**A.   This Court should Stay this Matter because the Supreme Court's Decision in *Facebook* will be Dispositive of a Threshold Issue in this Case, and may extinguish Plaintiff's Claim Entirely.**

   1.   <u>The definition of ATDS is unsettled nationwide, though a majority of Circuits adhere to the statutory definition.</u>

The TCPA prohibits, among other things, calling a cellular telephone with an ATDS without the called party's consent. *See* 47 U.S.C. § 227. The TCPA defines an ATDS as "equipment which has the capacity – to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers." *Id*. at § 227(a)(1). The FCC has previously interpreted this statutory definition through various orders,[1] but in March 2018, the D.C. Circuit Court of Appeal vacated the FCC's interpretations of what constitutes an ATDS as arbitrary, capricious, and overbroad. *See ACA International v. Federal Communications Commission*, 885 F.3d 687, 702 (D.C. Cir. 2018). The *ACA* decision left a void in authority throughout the country, as most cases addressing the issue of what

---

[1] *See, e.g.*, *In Re Rules & regulations Implementing the Tel. Consumer Prot. Act of 1991, et al., Declaratory Ruling and Order*, 30 FCC Rcd. 7961, 7972-73 (2015); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order*, 23 FCC Rcd. 559, 566 (2008); *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order*, 18 FCC Rcd. 14014, 14017 (2003).

qualified as an ATDS prior to that decision had been decided based on the now-vacated FCC guidance.

The split in authority among the Circuits has led to fractured and unequal enforcement of the TCPA. The Third, Seventh, and Eleventh Circuits have adopted the statutory definition of an ATDS, holding that the telephone system must use a "random or sequential number generator" to qualify as an ATDS. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020); *see also Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1311-12 (11th Cir. 2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018). Conversely, the Second, Sixth, and Ninth Circuits have adopted a broad interpretation that strays from the statutory definition, concluding that a telephone system that can simply "make calls from stored lists" qualifies as an ATDS. *See Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 287 (2d Cir. 2020); *see also Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567, 579-580 (6th Cir. 2020) (holding that an ATDS includes telephone systems with the capacity to store telephone numbers to be called *or* produce numbers to be called using a random or sequential number generator); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051-52 (9th Cir. 2018) (holding that any device storing telephone numbers to be called, "whether or not those numbers have been generated by a random or sequential number generator," qualifies as an ATDS).

2.    The Supreme Court's decision in *Facebook* will resolve the
Circuit split by defining the scope of an ATDS.

The Supreme Court's decision in *Facebook* will resolve the split in authority among the Circuit Courts, thereby establishing binding precedent on what qualifies as an ATDS.  Specifically, the Court is addressing "whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'"  Order, *Facebook*, No. 19-511, 2020 U.S. LEXIS 3559, at *1.  If the Court adopts the position of the Third, Seventh, and Eleventh Circuits, the scope of telephone equipment that qualifies as an ATDS will be significantly limited – requiring that any numbers stored or called are generated using a random or sequential number generator.  The Court has already heard arguments in *Facebook*, and should issue a decision no later than June of 2021 (within approximately the next six months).

The Supreme Court's decision in *Facebook* will not only be "highly relevant in the adjudication of claims like those asserted in this action," it will be dispositive of the national class action claims asserted in the Complaint.  *See Garza*, Case No. 17-10673, 2017 U.S. Dist. LEXIS 169506, at *2.

3.    The Supreme Court's forthcoming ruling could extinguish Plaintiff's TCPA claim and completely dispose of this action.

Plaintiff claims that Ally violated the TCPA by calling her cell phone using an ATDS without her consent. *See* Compl. ¶¶ 51-54. She does not allege that Ally contacted her after randomly or sequentially generating her telephone number in order to call her, but instead that it called her in hopes of reaching her brother who has an account with Ally. *Id.* at ¶¶ 17, 19-20. That is to say, the Complaint alleges that Ally called Plaintiff's telephone number specifically and purposefully, not as the result of random chance. Plaintiff's only allegations to support belief that Ally used an ATDS is "the lack of prompt human response during the phone calls" and a "lengthy pause after the called party speaks." *Id*. at ¶¶ 51-52. In other words, Plaintiff is not alleging that Ally used a random or sequential number generator, she is alleging that her number was stored on Ally's telephone system and then dialed by an ATDS – relying on the current view in a minority of Circuits (including the Sixth) that a telephone system with the capacity to simply store numbers constitutes an ATDS.

If the Supreme Court rejects the Second, Sixth, and Ninth Circuits broad interpretation of the TCPA, Plaintiff's claims will be entirely extinguished. Should the Court find that any number stored or called must be "generated using a random or sequential number generator," Plaintiff's claim under the TCPA will fail. As she alleges in the Complaint, the calls to Plaintiff were not random. They were meant

to reach her brother who is an Ally account holder. *Id.* At ¶¶ 17, 19-20. Such calls, if they in fact occurred, would not be the product of random or sequential number generation. Ally is not in the business of dialing random numbers for no reason. Any calls made by Ally are to specific individuals, at specific phone numbers, for specific business purposes.

The Supreme Court's forthcoming decision will likely dispose of this action because the broad interpretation of the statute embraced by a minority of Circuits simply expands the TCPA beyond its original purpose. *See Gadelhak*, 950 F.3d at 469 (commenting that the Ninth Circuit's decision in *Marks* involved "a significant judicial rewrite" of the statute). And even in the unlikely event the Supreme Court does not side with the majority of Circuit Courts, its decision will materially shape and substantially streamline this case involving a national class action, including fact and expert discovery and related motions practice. The dispositive and important impact *Facebook* will have on this case warrants a stay. *See Garza*, Case No. 17-10673, 2017 U.S. Dist. LEXIS 169506, at *2.

Accordingly, because the impending decision in *Facebook* will either eliminate Plaintiff's claim or materially shape this case, this Court should stay this matter until the Supreme Court issues its ruling.

**B.    A Stay in this Matter Serves the Interests of Judicial Economy, Poses No Risk to the Public Welfare, and is in the Best Interests of the Parties.**

A stay in this matter benefits all involved, including the Court.  Again, this Court has broad discretion to enter a stay, and there are no prerequisites that must be met by the moving party to obtain one.  However, courts considering whether to stay litigation pending the outcome of another case have weighed "the potential dispositive effect of the other case, judicial economy achieved by awaiting adjudication of the other case, the public welfare, and the relative hardships to the parties created by withholding judgment." *Caspar*, 77 F. Supp. 3d at 644.  Staying this matter until the Supreme Court issues its decision in *Facebook* will preserve judicial resources, poses no risk to the public welfare, and will benefit both Parties by streamlining this litigation.

With respect to judicial economy, there are two potential outcomes from the Supreme Court's decision in *Facebook*, both of which weigh in favor of a stay because they will preserve judicial resources.  The most likely outcome is that the Supreme Court's decision will eliminate Plaintiff's claim, ending this litigation involving a national class action before the Court is required to consider any motions or discovery matters, let alone trial.  The less likely outcome is that, at minimum, the Supreme Court's decision streamlines this litigation by providing a clear and binding definition of what constitutes an ATDS, thereby eliminating the need for substantial expert discovery and motions practice.  Under either scenario, this Court benefits from waiting for the Supreme Court's decision.

With respect to the public welfare, there is no potential harm by staying this matter for approximately six months. Plaintiff has not alleged that Ally is causing any sort of generalized or wide-spread harm to the public – her complaint concerns telephone calls. And while she has pled a broad class definition covering "non-customers" nationwide, the factual allegations in the Complaint reveal that the alleged telephone calls are in no way random. Indeed, Plaintiff was allegedly called because Ally was trying to reach her brother, who has an account with Ally. *See* Compl. ¶¶ 17, 19-20. There is a high probability that the Supreme Court's ruling will determine such targeted phone calls do not violate the TCPA, and the public welfare is not harmed by waiting six months for that clarity.

Finally, with respect to relative hardships, both Parties will ultimately benefit from a stay in this case. If the Supreme Court's decision does eliminate Plaintiff's claim by rejecting the broad interpretation of the TCPA upon which she relies, both Parties will save time and resources that would otherwise be spent litigating on an ultimately moot lawsuit. If the Supreme Court's decision does not eliminate Plaintiff's claim, it will nonetheless streamline litigation, reducing the time and resources the Parties will need to spend on expert testimony and motions practice over the ATDS issue.

Moreover, the stay contemplated in this Motion is not indefinite or ambiguous. The Supreme Court has already heard oral arguments in *Facebook* and

will render a decision by June 2021.  Neither party will suffer any hardship by

waiting six months to begin litigating this matter.  As mentioned above, neither party

has served discovery and the Parties have only recently submitted a Joint Discovery

Plan.  Ally would suffer undue hardship if it is forced to move forward with

substantial discovery (i.e., document production, written discovery, depositions, and

expert discovery) just for the case to be rendered moot, or the issues significantly

streamlined, by the *Facebook* decision.  There is no debate that defendants bear the

cost and inconvenience of asymmetric discovery in class action litigation.  *See, e.g.*,

*Am. Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010) (explaining that

class action plaintiffs use "discovery to impose asymmetric costs on defendants in

order to force a settlement advantageous to the plaintiff regardless of the merits of

his [or her] suit.").  Granting a stay in this case will ultimately benefit both Parties,

while denying the stay will disproportionately harm Ally.

Accordingly, because a stay would serve the interests of judicial economy,

poses no risk to the public welfare, and would benefit the Parties, this Court should

stay this matter pending the Supreme Court's decision in *Facebook*.

## C. Courts throughout the Country have stayed Cases pending the Supreme Court's decision in *Facebook*, and other Cases with Potentially Dispositive Effects on TCPA Litigation.

Courts throughout the country have granted stays pending the Supreme

Court's decision in *Facebook*, and this Court should join them.  *See, e.g.*, *Loftus v.*

*Signpost, Inc.*, Case No. 19-cv-7984, 2020 U.S. Dist. LEXIS 193130 (S.D.N.Y. Oct. 19, 2020) ("[a] decision in the <u>Facebook</u> case may substantially resolve the present case, easing the burden of discovery on the defendant and saving judicial resources."); *Beal v. Outfield Brew House, LLC*, No. 20-1961 (8th Cir. July 14, 2020); *Jensen v. Roto-Rooter Servs. Co.*, Case No. C20-0223-JCC, 2020 U.S. Dist. LEXIS 151256 (W.D. Wash. Aug. 20, 2020); *Runyon v. Everquote, Inc.*, 1:20-cv-012060-RM-STV (D. Colo. July 23, 2020);; *Hoffman v. Jelly Belly Candy Co.*, No. 2:19-cv-01935-JAM-DB (E.D. Cal. July 17, 2020); *Young v. Bank of Am. N.A.*, No. 4:19-CV-03867-JST (N.D. Cal. July 15, 2020); *Rossano v. Fashion Mkty and Merch Grp., Inc.*, No. 2:19-cv-10523 (C.D. Cal. July 14, 2020); *but see Pittenger v. First Nat'l Bank of Omaha*, Case No. 20-CV-10606, 2020 U.S. Dist. LEXIS 171062 (E.D. Mich. Sept. 18, 2020)[2].

This Court has previously recognized the benefit and need to stay proceedings pending impending litigation involving the TCPA that "could be highly relevant in the adjudication of claims like those asserted in this action." *See Garza*, Case No. 17-10673, 2017 U.S. Dist. LEXIS 169506, at *2 (staying litigation pending D.C.

---

[2] While the Court in *Pittenger* denied a stay pending the Supreme Court's decision in *Facebook*, that decision came before oral argument and there are additional claims involved in that case that are not at issue here.  Specifically, plaintiff in that case alleged use of an artificial voice/pre-recorded message as an independent basis for liability under the TCPA, as well as a common law claim for intrusion upon seclusion. *See Pittenger*, Case No. 20-CV-10606, 2020 U.S. Dist. LEXIS 171062 at *6-7.  Based on these additional claims, the Court concluded that the *Facebook* decision would not be dispositive of the claims in that case.  *Id.*  The same is not true here.

Circuit Court's decision in *ACA International*).  The same is true, if not to a greater extent, in this case.  The *Facebook* decision will either resolve or substantially streamline litigation in this case, and it benefits all involved to wait for the decision.

## V.    CONCLUSION

Based on the foregoing reasons, Defendant Ally Financial Inc. respectfully requests that this Court grant this Motion, enter an order staying all proceedings in this case pending a decision in *Facebook, Inc. v. Duguid*, No. 19-511, and grant such further relief the Court deems just.

Dated: December 28, 2020

**ALLY FINANCIAL INC.**

By:  _____*/s/ Ethan Ostroff*_____

Ethan G. Ostroff
Mark D. Kundmueller (P66306)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7541
E-mail: ethan.ostroff@troutman.com

*Counsel for Ally Financial Inc.*