UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE M. BARRY individually
and on behalf of all others similarly
situated,

Case No. 20-12378

Plaintiff,

Paul D. Borman
United States District Judge

v.

ALLY FINANCIAL, INC.,

Defendant,

_____/

## OPINION AND ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE

This is a putative national class action brought under the Telephone Consumer

Protection Act (TCPA), 47 U.S.C. § 227. On March 16, 2021, the Court granted

Defendant's Motion to Stay the proceedings pending the United States Supreme

Court's ruling in *Facebook, Inc. v. Duguid*, No. 19-511. (ECF No. 26.) The issue

before the Supreme Court in *Facebook* was whether the definition of an automatic

telephone dialing system in the TCPA encompasses any device that can "store" and

"automatically dial" telephone numbers, even if the device does not "us[e] a random

or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167

(2021).

1

On April 1, 2021, the Supreme Court issued its decision in *Facebook*, "hold[ing] that a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Facebook*, 141 S. Ct. at 1173.

On April 15, 2021, the Court entered an Order Lifting the Stay and Ordering Plaintiff to Show Cause why the Supreme Court's decision in *Facebook* is not controlling over Plaintiff's claims in this case. (ECF No. 28). In that Order, the Court noted that Plaintiff bases her TCPA claim against Defendant on phone calls she received that were unsolicited but nonetheless directed to her, on behalf of her brother, and that Plaintiff does not allege that Defendant used a random or sequential number generator.

Plaintiff filed her response to the Court's show cause order on April 30, 2021 (ECF No. 29), and Defendant filed a reply on May 14, 2021 (ECF No. 30). The Court does not believe oral argument will aid in its disposition of this matter; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons that follow, the Court finds that Supreme Court's decision in *Facebook* is controlling over Plaintiff's claims in this case and dismisses Plaintiff's Complaint with prejudice for failure to state a claim under the TCPA.

## I. BACKGROUND

### A.     Plaintiff's Complaint

On August 31, 2020, Plaintiff Christine M. Barry filed this putative national Class Action Complaint alleging, on behalf of herself and others similarly situated, that Defendant Ally Financial Inc., "a prominent banking institution that provides consumers with various banking services, including mortgage and car loan financing," violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, by placing calls to cell phone numbers belonging to non-customers of Defendant, using an Automatic Telephone Dialing System (ATDS), without the consent of the recipient, in an attempt to collect a debt (delinquent car loans). (ECF No. 1, Complaint ¶¶ 9, 32, 51, PageID.2, 4-5, 7.)

The TCPA prohibits, in part, calling a cellular telephone with an ATDS without the called party's consent. *See* 47 U.S.C. § 227(b)(1). The TCPA defines an ATDS as:

> ... equipment which has the capacity –
>
> > (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
> >
> > (B) to dial such numbers.

*Id.* § 227(a)(1).

3

Individually, Plaintiff alleges that Defendant called her cell phone, without her consent, using an ATDS, in an attempt to reach her brother, "who has a car loan financed by Defendant." (Compl. ¶ 17, PageID.3.) Plaintiff pleads that she requested that Defendant stop calling her cell phone, but that Defendant "continued placing phone calls to Plaintiff in an effort to reach her brother." (*Id.* ¶¶ 19-20, PageID.3.) Plaintiff claims that "Defendant's phone calls were part of its scheme to collect delinquent car loans from borrowers" by "plac[ing] phone calls to borrowers' relatives and acquaintances in an effort to pressure the borrowers to make payment on their loans to avoid the embarrassment of being perceived as 'deadbeats' by the borrowers' relatives and acquaintances." (*Id.* ¶ 25, PageID.3.) (*See id.* ¶ 57, PageID.8 ("Defendant's phone calls were deliberately placed to non-borrowers in an attempt to compel payment on a delinquent car loan owed by an acquaintance or relative of the non-borrower.").)

Plaintiff brings this Complaint as a putative national class action. The putative class is defined as:

> All persons residing in the United States: (a) whom do not have an existing account with Defendant; (b) to whom Defendant or a third party acting on Defendant's behalf, placed a phone call to his/her cellular phone; (c) in connection with a delinquent car loan that is not owed by him/her; (d) using an automatic telephone dialing system; (e) at any time in the period that begins four years before the date of the filing of the original complaint through the date of class certification.

4

(*Id.* ¶ 32, PageID.4-5.)

Plaintiff's Complaint asserts one claim for violation of the TCPA, on behalf

of Plaintiff and the Members of the TCPA Class, and seeks injunctive and monetary

relief. (*Id.* Count I, PageID.7-8.)

**B.      The Case is Stayed Pending the Supreme Court's Decision in** ***Facebook***

On March 16, 2021, the Court granted Defendant's Motion to Stay the

proceedings pending the Supreme Court's ruling in *Facebook, Inc. v. Duguid*, No.

19-511 ("Facebook"). (ECF No. 26.)

On April 1, 2021, the Supreme Court issued its decision in *Facebook*. The

issue before the Court was "whether [the definition of an ATDS] encompasses

equipment that can 'store' and dial telephone numbers, even if the device does not

'us[e] a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.

Ct. 1163, 1167 (2021). The Court answered "[i]t does not," explaining that "[t]o

qualify as an 'automatic telephone dialing system,' a device must have the capacity

either to store a telephone number using a random or sequential generator or to

produce a telephone number using a random or sequential number generator." *Id.* at

1167. The Court then held that "a necessary feature of an autodialer under §

227(a)(1)(A) is the capacity to use a random or sequential number generator to either

store or produce phone numbers to be called." *Id.* at 1173.

On April 15, 2021, as required by the Court's Stay Order, the parties filed a joint status report. (ECF No. 27.) The parties stated that they disagree about the impact the *Facebook* decision has on this case, and proposed a scheduling order for the case going forward. (ECF No. 27)

### C.    The Court Lifts the Stay and Orders Plaintiff to Show Cause

On April 15, 2021, the Court issued an Order Lifting Stay and Ordering Plaintiff to Show Cause why the Supreme Court's *Facebook* decision is not controlling over Plaintiff's claims in this case, because Plaintiff pleads that the phone calls were purposefully directed to her, related to her brother's account with Defendant, and thus were not stored or produced "using a random or sequential number generator." (ECF No. 28.)

Plaintiff filed her Response to Order to Show Cause on April 30, 2021. (ECF No. 29, Pl.'s Resp.) Plaintiff "concedes that [her] number was likely called from a stored list" (and thus not randomly or sequentially generated). (*Id.* PageID.134-35.) She nevertheless claims that her TCPA claims are not "conclusively preclud[ed]" so long as the dialing system at issue has the *capacity* to store or produce numbers using a random or sequential number generator, even if it does not actually randomly or sequentially generate numbers. (*Id.* PageID.135-36.) Plaintiff contends that she is entitled to discovery to determine the capacities of the dialing system used by

6

Defendant. (*Id.* PageID.136.) Plaintiff further argues that "the Supreme Court in *Facebook* raised the possibility [in a footnote] that a system will qualify as an ATDS if it uses 'a random number generator to determine the order in which to pick phone numbers from a preproduced list.'" (*Id.* PageID.138, citing *Facebook*, 141 S. Ct. 1172 n.7.)

On May 14, 2021, Defendant filed a Reply to Plaintiff's Response, arguing that the Supreme Court's decision in *Facebook* is controlling over Plaintiff's claims and dictates that those claims be dismissed. (ECF No. 30, Def.'s Reply.) Defendant contends that Plaintiff's reliance on the term "capacity" is misplaced, and that the definition requires "actual *use* of a random or sequential number generator," pointing out that the Supreme Court stated that "Congress' definition of an autodialer ***requires that in all cases***, whether storing or producing numbers to be called, the equipment in question ***must use*** a random or sequential number generator." (*Id.* PageID.142-43, citing *Facebook*, 141 S. Ct. at 1170 (emphases added by Defendant).) Because Plaintiff has not and cannot allege that Defendant used a random or sequential number generator to store or produce, and then dial, *her* number, she fails to state a claim under the TCPA. Defendant further argues that Plaintiff misinterprets footnote 7 of the *Facebook* opinion, which Defendant asserts is *dicta* that comes after the main holding of the case. Defendant asserts that the

7

Supreme Court was merely explaining, in that footnote, why it was not superfluous

for Congress to include both "store" and "produce" in the definition of autodialer.

## II.  ANALYSIS

**A.     The Supreme Court in *Facebook* Requires Telephone Equipment to Use a Random or Sequential Number Generator to Qualify as an ATDS**

Plaintiff's sole claim in this case is that Defendant violated the TCPA's

prohibition on "using any [ATDS]" to call or text "any telephone number assigned

to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A). (Compl., Count I,

PageID.7-8.) She bases her claim on phone calls she received that were unsolicited

but nonetheless directed to her, on behalf of her brother. (*Id.* ¶¶ 15-24, PageID.2-3.)

Plaintiff does not allege that Defendant used a random or sequential number

generator to make the calls. Because the calls Plaintiff complains about were

directed to Plaintiff specifically and purposefully, related to her brother's account

with Defendant, the Court can only conclude that the technology that called her used

a stored list containing the names and numbers of persons to be contacted; had the

technology stored or produced Plaintiff's number at random or in sequence, it would

have no way of knowing that it was contacting someone associated with a specific

account holder. The Supreme Court in *Facebook* plainly held that "a necessary

feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or

8

sequential number generator to either store or produce numbers to be called." *Facebook*, 141 S. Ct. at 1173. Plaintiff expressly concedes in her Response that "[her] number was likely called from a stored list," (Pl.'s Resp. PageID.134), and thus it was not randomly or sequentially generated.

To get around this bar to her TPCA claim following the *Facebook* decision, Plaintiff contends that *if* the autodialer system at issue simply has the *capacity* to store or produce numbers using a random or sequential number generator, even though it did not use that technology to dial Plaintiff's number, then she can sustain her TCPA claim. (Pl.'s Resp. PageID.136.) Plaintiff cites to two pre-*Facebook*, Ninth Circuit decisions in support: *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("[A] system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it."); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing *Satterfield*).) Plaintiff relies on the definition of an ATDS under the TCPA, which includes equipment which has the *capacity* to store or produce numbers using a random or sequential number generator, and the Supreme Court's opinion in *Facebook* that "[t]o qualify an [ATDS], a device must have the *capacity* either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator."

(*Id.* PageID.133-34, citing *Facebook*, 141 S. Ct. at 1167.) Plaintiff claims she therefore is entitled to discovery to determine the capacities of the dialing system used by Defendant to place the calls at issue. (*Id.* PageID.136-37.)

The TCPA prohibits the unlawful "use" of an ATDS to "make any call," *see* 47 U.S.C. § 227, not simply the existence of such systems. *See Facebook*, 141 S. Ct. at 1168 ("The TCPA creates a private right of action for persons to sue to enjoin *unlawful uses* of autodialers….") (emphasis added); *see id.* at 1167 (noting that "Congress found autodialer technology to be uniquely harmful" because it "allow[ed] companies to dial random or sequential blocks of telephone numbers automatically"); *id.* at 1171 (noting that the TCPA "prohibitions target a unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity"). To accept Plaintiff's argument that she only has to show that the autodialing system used by Defendant has the capacity to use a random or sequential number generator, even though she concedes that such alleged capacity was *not used* to make the calls to her (or to the purported class members), would have the effect of imposing liability on a defendant whenever it has such a system, with admittedly no nexus to the alleged harm to the plaintiff. The Supreme Court in *Facebook* emphasized that "Congress' definition of an autodialer requires that, *in all cases*, whether storing or producing numbers to be

10

called, the equipment in question *must use* a random or sequential number generator." *Facebook*, 141 S. Ct. at 1170 (emphases added) (noting that "[t]his definition excludes equipment like Facebook's login notification system, which does not use such technology"); *see also McEwen v. Nat'l Rifle Ass'n of Am.*, No. 2:20-cv-00153-LEW, 2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021) ("After the *Duguid* opinion, the ATDS portion of the claim requires an allegation that InfoCision used a random or sequential number generator to place a call to Plaintiff's cellphone, not merely a claim that its dialing system has that capability."). In this case, Plaintiff does not dispute that Defendant's autodialer system did not use a random or sequential number generator in connection with its calls to her (or to the purported class members). Rather, these calls were targeted at specific individuals in connection with specific accounts held by Defendant. That ends this case.

Looking further, Plaintiff's Complaint is also dismissed because it fails to plausibly plead that Defendant's dialing system *used* a random or sequential number generator to *make calls* to her, or even any facts that infer that the system had the *capacity* to make such calls. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores,*

*Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff's Complaint claims that Defendant's dialing system "place[ed] phone calls to Plaintiff in an effort to contact her brother," and alleges a "scheme to place phone calls to borrowers' relatives and acquaintances in an effort to pressure the borrowers to make payment on their loans[.]" (Compl. ¶¶ 20, 25, PageID.3.) Plaintiff further defines the proposed class members as persons to whom Defendant "placed a phone call" "in connection with a delinquent car loan that is not owed by him/her[.]" (*Id.* ¶ 32, PageID.4-5.) Plaintiff pleads that "Defendant's phone calls were deliberately placed to non-borrowers in an attempt to compel payment on a delinquent car loan owed by an acquaintance or relative of the non-borrower." (*Id.* ¶ 57, PageID.8.) Thus, all of these calls were targeted at specific individuals. There

is no allegation in the Complaint even hinting that Defendant used its dialing system

to make calls to Plaintiff, or to any putative class member, or to anyone else, using

a random or sequential number generator, or even that the Defendant's dialing

system had the capacity to do so (such as allegations that Defendant's dialing system

could be used to call persons at random, with no direct connection to Defendant's

business). *See ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 702 (D.C. Cir.

2018) (explaining that "numbers that are 'randomly or sequentially generated' differ

from numbers that 'come from a calling list.'").

"[E]ven though a plaintiff 'will rarely, if ever, know the specific functionality

of a system used by a defendant' before discovery, the plaintiff must still allege

sufficient facts to 'nudge' his claim 'across the line from conceivable to plausible'"

*Watts v. Emergency Twenty Four, Inc.*, No. 20-cv-1820, 2021 WL 2529613, at \*4

(N.D. Ill. June 21, 2021) (citations omitted). Plaintiff's mere speculation in his

Response to the Court's show cause order that Defendant's dialing system *might*

have the capacity to use randomly generated number systems to call other unknown

persons, for some other unknown reason, without any factual basis in the pleadings

to support that speculative possibility, fails to satisfy *Twombly*, which limits

claimants to *plausible* claims, not just *possible* ones. *Agema*, 826 F.3d at 331 ("The

facts cannot make it merely possible that the defendant is liable; they must make it

13

plausible."); *see also Watts*, 2021 WL 2529613, at *3 (plaintiff's complaint, which alleges "that instead of randomly or sequentially generating Watts's number, EMERgency24's equipment stored Watts's number in a database and dialed that stored number because he was an employee at a business that used EMERgency24's alarm notification system" "do[es] not support an inference that EMERgency24's system is an ATDS under the interpretation set forth in [*Facebook*]"); *Hufnus v. DoNotPay, Inc.*, No. 20-cv-08701-VC, 2021 WL 2585488, at *1 (N.D. Cal. June 24, 2021) (DoNotPay's platform "only contacts phone numbers specifically provided by consumers during DoNotPay's registration process, and not phone numbers identified in a random or sequential fashion" and thus it "does not qualify as an autodialer under the TCPA"); *Mosley v. Gen. Revenue Corp.*, No. 1:20-cv-01012-JES-JEH, 2020 WL 4060767, at *3 (C.D. Ill. July 20, 2020) (explaining that "generally no plaintiff ought to be held to a standard that requires the plaintiff to plead technical information [ ] which they could not have pre-discovery," but a claim is not plausible "because a plaintiff merely alleges the dialer system has the capacity to randomly or sequentially generate numbers, without any factual basis for such allegations," as that standard "would make huge swaths of otherwise innocuous phone calls at risk of litigation"); *Snow v. Gen. Elec. Co.*, No. 5:18-cv-0511, 2019 WL 2500407, at *4 (E.D.N.C. June 14, 2019) (holding that where a plaintiff is "a

14

targeted recipient" of text messages, "it is not reasonable to infer that the messages were sent with equipment 'using a random or sequential number generator.'"); *Suttles v. Facebook, Inc.*, 461 F. Supp. 3d (W.D. Tex. 2020) (granting motion to dismiss because "[a]llegations of directly targeting specific individuals weigh against an inference that an ATDS was used"). "To claim that [defendant] *might* have been us[ing] a device that *might* have the capacity to randomly or sequentially generate numbers is clearly speculation." *Mosley*, 2020 WL 4060767, at *4 (emphasis in original); *id.* at *3 (rejecting "the inference that a claim is plausible because a plaintiff merely alleges the dialer system has the capacity to randomly or sequentially generate numbers, without any factual basis for such allegations").

Accordingly, Plaintiff's Complaint, as pleaded, fails to state a claim and it is dismissed with prejudice.

### B.    Supreme Court *Facebook* Decision's Footnote 7

Plaintiff contends in one paragraph at the end of her Response that "the Supreme Court in *Facebook* raised the possibility that a system will qualify as an ATDS if it uses 'a random number generator to determine the order in which to pick phone numbers from a preproduced list,'" and "[a]ccordingly, if Defendant used a random number generator to determine the *order* it called Plaintiff's number, then Defendant's system may qualify as an ATDS." (Pl.'s Resp. PageID.138, citing

*Facebook*, 141 S. Ct. at 1172 n.7.) Plaintiff seems to contend, without explanation or supporting evidence, that Defendant's dialing system operates in that manner. The Court rejects this argument.

Plaintiff takes footnote 7 out of context. Footnote 7 appears in a section of the Supreme Court's Opinion addressing, and rejecting, Duguid's counterargument that the phrase "using a random or sequential number generator" modifies only "produce," and not "store." *Facebook*, 141 S. Ct. at 1171. The Court used the line quoted by Plaintiff to explain how an autodialer might both "store" *and* "produce" randomly or sequentially generated phone numbers, citing to an amicus curiae brief from the Professional Association for Customer Engagement for support. *Id.* at 1171-72 (explaining that while "it is odd [as a matter of ordinary parlance] to say that a piece of equipment 'stores' numbers using a random number 'generator,'" "it is less odd as a technical matter"). The Court referred to 1988 "devices that used a random number generator to store numbers to be called later (as opposed to using a number generator for immediate dialing)." *Id.* at 1172. Footnote 7 follows the reference to that 1988 equipment. Thus, the "preproduced list" of phone numbers referenced in the footnote was itself created through a random or sequential number generator. *Id.* at 1172 n.7. *See Hufnus*, 2021 WL 2585488, at *1 (noting that the amicus brief "makes clear that the 'preproduced list' of phone numbers referenced

16

in the footnote was itself created through a random or sequential number generator");

*Timms v. USAA Fed. Sav. Bank*, No. 3:18-cv-01495, 2021 WL 2354931, at \*6

(D.S.C. June 9, 2021) (noting the amicus brief "explained that the 1988 technology

functions, in part, by creating an 'array' or list of telephone numbers that is

sequentially generated and stored" and "[i]n a separate step, the equipment randomly

generates a number"). Thus, the Supreme Court is discussing the process as

explained in the amicus brief in footnote 7, in which the "preproduced list" is one

that is "sequentially generated and stored." There has been no allegation that the pre-

existing "stored" list of phone numbers in this case were "sequentially generated and

stored." Rather, Plaintiff pleads that the phone numbers called are specifically

identified in connection with an account.

Further, Plaintiff's constrained reading of footnote 7 conflicts with the Court's

clear holding in *Facebook* that "a necessary feature of an autodialer under §

227(a)(1)(A) is the capacity to use a random or sequential number generator to either

store or produce phone numbers to be called." *Facebook*, 141 S. Ct. at 1173. And as

explained above, Plaintiff pleads that she, and purported class members, were called

in connection with specific accounts held by Defendant for a specific purpose, and

not through randomly or sequentially generated numbers.

17

## IV.   CONCLUSION

For all the reasons discussed above, the Court finds that Plaintiff's Complaint fails to plausibly plead that Defendant's dialing system used a random or sequential number generator to make calls to her, or even any facts that infer that the system had the capacity to make such calls, and therefore **DISMISSES** Plaintiff's Complaint **WITH PREJUDICE**.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: July 13, 2021